UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------  X
                                                                          :
TOMISLAV LUKIC,                                                           :          20-CV-3110 (ARR) (LB)
                                                                          :
                                    *Petitioner*,                         :
                                                                          :
            -against-                                                     :          **OPINION & ORDER**
                                                                          :
BAHRIJA ELEZOVIC,                                                         :
                                                                          :
                                    *Respondent*.                         :
                                                                          :
------------------------------------------------------------------------  X

ROSS, United States District Judge:

Petitioner, Tomislav Lukic, seeks the return of his minor daughter, N.L., to Montenegro

under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague

Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg.

10,494 (Mar. 26, 1986). Petitioner moves for summary judgment, arguing that he is entitled to

N.L.'s return as a matter of law. Pet'r's Mot. Summ. J. 6–28 ("Pet'r's Mot."), ECF No. 24.

Respondent, Bahrija Elezovic, N.L.'s mother, cross-moves for summary judgment, arguing that

petitioner cannot support a prima facie case for return and that regardless she has established

several affirmative defenses as a matter of law. Resp't's Cross-mot. Summ. J. & Opp'n Pet'r's

Mot. Summ. J. 9–18 ("Resp't's Cross-mot."), ECF No. 29. For the following reasons, I grant

petitioner's motion, deny respondent's motion, and order the prompt return of N.L. to Montenegro.

**BACKGROUND**

*N.L.'s Early Life*

N.L. is the shared daughter of petitioner and respondent.[1] Pet'r's Rule 56.1 Statement ¶¶

---

[1] Petitioner requests that I deem admitted all facts in his Rule 56.1 statement because respondent

1–2 ("Pet'r's Statement"), ECF No. 25.[2] She was born in Ulcinj, Montenegro in May 2014 and is

now six years old. *Id.* ¶ 2. N.L. is a citizen of Montenegro. *Id.* ¶ 4. Petitioner and respondent also

share an older son, D.L., who is now nine years old. D.L. Consent Form, ECF No. 41-1; Elezovic

Dep. 29:8–9, ECF No. 27-1 (filed under seal); Lukic Dep. 18:23–24, ECF No. 27-2 (filed under

seal).[3] D.L. currently lives with petitioner, who has had official custody of him since 2018. Pet'r's

Statement ¶ 50; Lukic Dep. 76:23–77:3, 78:23–79:2; Elezovic Dep. 42:9–17. When N.L. was

approximately twenty days old, she and respondent ceased living with petitioner and moved to

Podgorica, Montenegro. Pet'r's Statement ¶ 7. Respondent testified that petitioner kicked them out

---

did not submit a document "responding to each numbered paragraph" along with her opposition
papers, in violation of Local Civil Rule 56.1(b). Pet'r's Reply & Opp'n Resp't's Mot. Summ. J.
2–4 ("Pet'r's Reply"), ECF No. 33. Respondent admits her mistake and requests that I instead
consider the amended Rule 56.1 statement she submitted with her reply papers that complies
with the local rule. Resp't's Reply 2–4, ECF No. 36. "A district court has broad discretion to
determine whether to overlook a party's failure to comply with local court rules." *Holtz v.
Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). While I recognize that "[a] nonmoving
party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts
asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584
F.3d 412, 418 (2d Cir. 2009), given the stakes of this case for the parties and their minor child, I
do not want my decision to turn on a technicality. Accordingly, I will accept as true all facts that
both parties consider uncontested, as reflected in their Rule 56.1 statements, petitioner's
opposition to respondent's Rule 56.1 statement, and respondent's amended Rule 56.1 statement.
As to the facts that appear to be contested, my role "is not to resolve disputed issues of fact but to
assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54,
60 (2d Cir. 2010) (citation omitted). Thus, I will "conduct an assiduous review of the record" to
determine if the contested facts present genuine disputes of material fact that preclude summary
judgment. *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (citation
omitted).

[2] For uncontested facts, I will cite either to petitioner's Rule 56.1 statement or petitioner's
opposition to respondent's Rule 56.1 statement. *See* Pet'r's Statement; Pet'r's Opp'n Resp't's
Rule 56.1 Statement ("Pet'r's Opp'n Statement"), ECF No. 34.

[3] I initially granted the parties' motion to seal the depositions of petitioner and respondent in full.
Op. & Order 2, ECF No. 22. However, the parties' depositions are key to multiple factual
disputes discussed in this opinion. Thus, I order the parties to publicly file redacted versions of
the depositions that comport with Federal Rule of Civil Procedure 5.2(a).

of his home. Elezovic Dep. 38:18–23. But petitioner testified that he "never kicked her out" and she decided to leave with N.L. based on "mutual consent." Lukic Dep. 58:23–25.[4]

### *Custody Judgment*

On April 17, 2015, the Primary Court in Podgorica issued an order governing N.L.'s custody. Pet'r's Statement ¶ 17. The court awarded "care and upbringing" to respondent, "with whom the minor [N.L.] is to reside." Custody J. 1, ECF No. 26-8; Pet'r's Statement ¶ 18. The court also ordered that petitioner had the right to have contact with N.L. every fifteen days until she reached two years old, after which he would have the right to take her with him every other week from Friday evening to Sunday evening. Custody J. 1; Pet'r's Statement ¶¶ 19–20. This custody judgment is final and non-appealable. Pet'r's Statement ¶ 21.

### *N.L.'s Life in Montenegro*

N.L. remained living with respondent in Podgorica and attended school in Montenegro until she entered the United States in July 2019. *Id.* ¶¶ 5, 8, 14. Respondent claims she "struggled to live" and "was forced to request help from the social services and Food Bank." Resp't's Am. Rule 56.1 Statement ¶ 80 ("Resp't's Am. Statement"), ECF No. 37; Elezovic Dep. 117:4–6 ("We lived off of social security assistance I was getting. So I could not really provide anything for my kids."). She supports this assertion primarily with a newspaper article written about her that details her financial struggles and requests donations for her family. Vijesti Article, ECF No. 31-11. Petitioner denies that his "children went to bed hungry" and claims that respondent's apartment in Podgorica "had everything." Lukic Dep. 66:16–24, 69:3–12.

Petitioner claims that in accordance with the custody judgment he visited N.L. in Podgorica

---

[4] Respondent initially took D.L. with her to Podgorica, as well. Elezovic Dep. 104:10–21; Lukic Dep. 78:20–25. Petitioner testified that after two months, D.L. moved back in with him in Ulcinj. Lukic Dep. 78:20–24.

often before she turned two. Pet'r's Statement ¶¶ 23–26 (citing Lukic Dep. 157:10–20, 158:4–6; Photographs, ECF No. 27-5 (filed under seal)). After that, he claims he continued to visit her or bring her to Ulcinj on alternating weekends. *Id.* ¶¶ 27–28 (citing Lukic Dep. 158:7–159:8, 160:12–161:6). In support, petitioner submitted several photographs showing him with N.L. on various dates between November 2015 and October 2018. *See* Photographs. Respondent denies these assertions. She claims petitioner "had no interest in visiting" N.L. and "would not take her for visits at all." Resp't's Am. Statement ¶¶ 23–25, 27–28 (citing Elezovic Dep. 45); Resp't's Statement Add'l Facts ¶¶ 25, 26, 28 ("Resp't's Add'l Facts"), ECF No. 37 (citing Elezovic Dep. 45, 105, 163). She testified that petitioner "would come for his weekends to pick up his son . . . . He comes to see [N.L.] when he comes to pick up the son, and when he returns the son to me . . . . So if you ask me if he ever came just because of the daughter to pick her up to take her somewhere and to return her on time, no, never." Elezovic Dep. 45:13–46:4; *see also id.* at 85:10–13. She also testified that when petitioner first visited respondent in Podgorica a month after she left his home with their children, "[h]e just came to see his son, and he did not even come into the apartment . . . . [H]e did not even pay any attention to the daughter." *Id.* at 107:7–12. However, both parties agree that "Elezovic would take the children to Ulcinj in the summers so that [petitioner] can see them." Pet'r's Opp'n Statement ¶ 27. Regardless of the frequency of contact, petitioner "never beat, never struck, and never physically abused N.L." Pet'r's Statement ¶ 77.

Petitioner failed to pay child support on three occasions, resulting in criminal judgments against him. *Id.* ¶ 41. Respondent asserts that petitioner "would only make payments when mandated by the Court Order to evade getting fined or imprison[ed]" and currently is not paying child support. Resp't's Add'l Facts ¶¶ 30, 32; Elezovic Dep. 56:7–10. But petitioner testified that he does not currently pay child support for N.L. because the child support respondent owes him

for their son's care is a nearly equal amount. Lukic Dep. 108:11–23. And respondent admitted that

petitioner paid "regularly every month after the last court order" up until June 2019. Elezovic Dep.

56:17–23.

***Consent Forms***

On August 11, 2017, petitioner and respondent signed similar consent forms, one allowing

D.L. to "cross the border in the company of" petitioner "to travel out of Montenegro (Serbia and

abroad) in the period unlimited," and one allowing N.L. to "cross the border accompanied by"

respondent "for the purpose of traveling abroad (America) during the period from unlimited." D.L.

Consent Form; N.L. Consent Form, ECF No. 41-2. Petitioner testified that the form for N.L. gave

respondent "the consent that she can go and travel as much as she wants so that I don't have to go

every time to Podgorica every time she wants to travel. Just as I have for the son, so that I don't

have to go every time to Podgorica, to United States, to ask for consent or to let the son go to

excursion with school." Lukic Dep. 128:8–15. Respondent testified that in presenting the form for

D.L., petitioner "never acknowledged any intention to have our son relocated. He asked me for the

permission for foreign travel at the same time when I asked him to sign off the permission that I

can travel with our daughter. So I signed also the permission for him that he can travel with our

son." Elezovic Dep. 66:6–13. When asked if the form for N.L. "sa[id] anything about relocation,"

respondent replied, "[N]o. It says here just for travel . . . . [T]his is the permission just to -- that

you can freely get over the border to get out of the country, and nothing else." *Id.* at 70:10–16.

Respondent further testified that she never spoke to petitioner about "how long the trip [to the

United States] [wa]s going to be," nor did she "know that [she] was going to stay" in the United

States ahead of time. *Id.* at 61:10–14, 22–24. Nevertheless, she asserted that "[t]here's no time

limit, how long I can stay with my child here in the United States." *Id.* at 67:22–23.

*Travel to the United States*

N.L. and respondent entered the United States in July 2019 on Montenegrin passports. Pet'r's Statement ¶¶ 8–10, 14. To help N.L. obtain her passport, petitioner had signed a passport application for her shortly before she traveled to the United States. Pet'r's Opp'n Statement ¶ 41. N.L. and respondent obtained nonimmigrant B-2 visitor visas to the United States. Pet'r's Statement ¶ 14. B-2 visas "are nonimmigrant visas for persons who want to enter the United States temporarily . . . for tourism." *Visitor Visa*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited Feb. 8, 2021).[5] N.L.'s and respondent's B-2 visas expired on January 1, 2020. Pet'r's Statement ¶ 14.

*N.L.'s Life in New York*

N.L. has been in New York for more than eighteen months. *Id.* ¶ 90. She lives with respondent in an apartment with respondent's sister, mother, and niece, and is enrolled in school, which takes place remotely due to the COVID-19 pandemic. *Id.* ¶¶ 91, 93; Pet'r's Opp'n Statement ¶¶ 49–51. N.L. "is in first grade and is learning how to write, draw, etc." Pet'r's Opp'n Statement ¶ 52. "N.L. is attached to her mother, Elezovic, with whom she's lived since birth." *Id.* ¶ 53. Respondent is not currently employed, other than occasionally helping her sister with projects. Pet'r's Statement ¶ 94.

*Applicable Montenegrin Law*

Articles 73 through 79 of Montenegrin Family Law regulate the relations between parents and children, as well as procedures related to the exercise of parental rights. Pet'r's Opp'n Statement ¶ 19. Petitioner's expert, Vladimir Radonjic, defines parental rights as "different duties

---

[5] "Courts routinely take judicial notice" of "documents retrieved from official government websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

and rights of parents to care about personality, rights and interests of their children." Radonjic Report 2, ECF No. 42-1. Respondent's expert, Vesna Raicevic, defines parental rights as "ha[ving] custody." Raicevic Report 6, ECF No. 31-7.

Article 78 provides that "[o]ne parent shall exercise parental right on the grounds of court decision when the parents do not live together, and have not concluded an agreement on exercise of parental right." Radonjic Report 84. Both experts agree that Article 78 applies to N.L. Raicevic Report 7; Radonjic Report 2. Respondent asserts, based on Raicevic's report, that the 2015 custody judgment appointed her "as the only parent who exclusively exercises parental rights" over N.L. Raicevic Report 7; Resp't's Add'l Facts ¶ 18. Petitioner, however, denies that only respondent has parental rights over N.L. Pet'r's Opp'n Statement ¶¶ 18, 21.

Article 79 provides:

> The agreement on the independent exercise of parental rights includes the agreement of the parents on entrusting the joint child to one parent, the agreement on the amount of contribution for the maintenance of the child from the other parent and the agreement on maintaining the child's personal relations with the other parent. The agreement on the independent exercise of parental rights transfers the exercise of parental rights to the parent to whom the child is entrusted. A parent who does not exercise parental rights has the right and duty to support the child, to maintain personal relations with the child and to decide on issues that significantly affect the child's life jointly and in agreement with the parent exercising parental rights. Issues that significantly affect the child's life, in terms of this law, are considered in particular: the child's education, undertaking major medical procedures on the child, changing the child's residence and disposing of the child's property of great value.

Resp't's Am. Statement ¶ 34; Radonjic Report 87; Raicevic Report 7. The rights granted under Article 79 of the Family Law of Montenegro can be altered only by a court order. Pet'r's Statement ¶ 39.

***Procedural History***

Petitioner submitted a request for return under the Hague Convention on February 3, 2020.

Return Request, ECF No. 26-14. He filed the instant action on July 13, 2020, Pet., ECF No. 1, and submitted an amended petition on August 27, 2020, Am. Pet, ECF No. 10. Respondent filed her answer on October 7, 2020. Ans., ECF No. 16. Petitioner served his motion for summary judgment on December 23, 2020. Pet'r's Mot. Respondent served her cross-motion for summary judgment and opposition to petitioner's motion on January 12, 2021. Resp't's Cross-mot. Petitioner served his reply in support of his motion for summary judgment and opposition to respondent's motion on January 18, 2021. Pet'r's Reply. Respondent served her reply in support of her motion on January 20, 2021. Resp't's Reply. Petitioner moved for a sur-reply on January 21, 2021. Pet'r's Mot. Leave File Sur-reply, ECF No. 38. I denied that motion on February 9, 2021. Text Order (Feb. 9, 2021).

## LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). Rather, it "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). And that evidence, just like that of the moving party, must be admissible for me to consider it. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence need be

considered by the trial court in ruling on a motion for summary judgment.").[6]

In evaluating both parties' submissions, I must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant," *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted), but "only if there is a 'genuine' dispute as to those facts," *Scott*, 550 U.S. at 380 (quoting Fed. R. Civ. P. 56(c)).

## DISCUSSION

**I.    Petitioner has shown no genuine dispute of material fact exists as to his prima facie claim of wrongful retention under the Hague Convention, and respondent fails to rebut that showing.**

Petitioner argues that he is entitled to N.L.'s return to Montenegro because he has *ne exeat* rights protected by the Hague Convention and respondent breached those rights by keeping N.L. in the United States beyond the six months to which he consented. Pet'r's Mot. 7–15. Respondent claims petitioner does not have any custody rights protected by the Hague Convention and even if he did, he waived them either by consenting to unlimited travel or failing to exercise those rights when N.L. was brought to the United States. Resp't's Cross-mot. 9–15.

The Hague Convention was adopted in 1980 "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of

---

[6] Respondent contends that she need not rely on admissible evidence in rebutting petitioner's prima facie case, relying on *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Resp't's Cross-mot. 8. However, *Celotex* applies only when a defendant moves for summary judgment "on the ground that the plaintiff has failed to adduce any evidence of an element of plaintiff's claim, and if the plaintiff fails in response to contest this assertion or adduce such evidence, defendant, without more, will prevail." *Giannullo v. City of New York*, 322 F.3d 139, 141 n.2 (2d Cir. 2003).

access." Hague Convention, Preamble, 51 Fed. Reg. at 10,498.[7] Both the United States and Montenegro are signatories. *See Hague Convention*, United Nations Treaty Collection, https://treaties.un.org/Pages/showDetails.aspx?objid=08000002800d90b4 (last visited Feb. 8, 2021). The Hague Convention protects both "rights of custody" and "rights of access" over children under sixteen but affords different remedies for breaches of each. Hague Convention arts. 1, 5; *see Abbott v. Abbott*, 560 U.S. 1, 11, 13–14 (2010). Custody rights are defined as "includ[ing] rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention art. 5(a). Access rights are defined as "includ[ing] the right to take a child for a limited period of time to a place other than the child's habitual residence." *Id.* art. 5(b). Returning the child to the country of habitual residence is the usual remedy for breaches of custody rights, but less extreme measures, like ordering the custodial parent to pay the travel costs of visitation, could remedy breaches of access rights. *See Abbott*, 560 U.S. at 13–14 (citing *Viragh v. Foldes*, 612 N.E.2d 241, 249–250 (Mass. 1993)).

To assert a breach of custody rights that entitles a petitioner to the return of a child under sixteen, the petitioner must show by a preponderance of the evidence that: "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter v. Gitter*, 396 F.3d 124, 130–31 (2d Cir. 2005).

---

[7] Congress established procedures for implementing the Hague Convention in the International Child Abduction Remedies Act, which creates a private right of action in federal court and provides that courts presiding over such actions "shall decide the case in accordance with the Convention." 22 U.S.C. § 9003(b), (d).

### A. N.L.'s habitual residence is Montenegro.

The uncontested facts prove that six-year-old N.L. was habitually resident in Montenegro before coming to the United States. "[A] child's habitual residence depends on the totality of the circumstances specific to the case," taking into account "the family and social environment in which the child's life has developed." *Monasky v. Taglieri*, 140 S. Ct. 719, 723, 726 (2020) (citation omitted). "Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence." *Id.* at 727. Here, it is undisputed that N.L. resided in Montenegro her entire life, up to the point when respondent took her to the United States more than eighteen months ago. Pet'r's Statement ¶¶ 5, 8, 14. Respondent presents no evidence that she was "coerced into remaining" in Montenegro or that any other factors would change this calculus. *Monasky*, 140 S. Ct. at 727. Thus, "[c]ommon sense suggests" that Montenegro is her habitual residence. *Id.*

### B. Respondent breached petitioner's *ne exeat* rights over N.L.

The Supreme Court has recognized that *ne exeat* rights—meaning joint rights to determine a child's country of residence—constitute custody rights under the Hague Convention. *See Abbott*, 560 U.S. at 10–11. A petitioner's *ne exeat* rights derive from "the domestic law of the State in which the child was habitually resident[,] . . . a judicial or administrative decision, or . . . an agreement having legal effect under the law of that State." *Ozaltin v. Ozaltin*, 708 F.3d 355, 367 (2d Cir. 2013) (quoting Hague Convention, art.3); *see also Abbott*, 560 U.S. at 14 (finding Chilean law afforded the petitioner *ne exeat* rights because it required his consent before the mother could remove the child from Chile, "subject only to the equitable power family courts retain to override

11

any joint custodial arrangements in times of disagreement").[8]

Here, it is undisputed that Article 79 of the Montenegrin Family Law grants "[t]he parent who does not exercise parental rights" the right "to decide on . . . the child's residence" and that this right can be derogated only through court order. Resp't's Am. Statement ¶ 34; Pet'r's Statement ¶ 39. The parties contest whether respondent exclusively holds "parental rights" over N.L. *See* Resp't's Add'l Facts ¶ 18; Pet'r's Opp'n Statement ¶¶ 18, 21. But this dispute is immaterial because Article 79 endows *ne exeat* rights even to "[t]he parent who does not exercise parental rights." Resp't's Am. Statement ¶ 34; Pet'r's Statement ¶ 39. In fact, both experts appear to agree that Article 79 applies in this case. *See* Radonjic Report 3; Raicevic Report 8 (acknowledging that under Article 79 petitioner "has the right . . . to decide on issues that significantly affect [N.L.]'s life jointly and in agreement with" respondent).[9] Thus, Article 79 establishes that petitioner has presumptive *ne exeat* rights over N.L.

Respondent has pointed to nothing in the 2015 custody judgment or any other court judgment that alters petitioner's Article 79 rights. Respondent's expert merely assumes that petitioner lacks "custody rights" under the Hague Convention because the 2015 custody judgment

---

[8] Respondent fundamentally misinterprets *Abbott* as holding that courts should look to the law of the child's habitual residence to determine *ne exeat* rights only absent a custody determination. Resp't's Cross-mot. 10. Rather, it is the law of the child's habitual residence that determines the effect of any custody judgment. *See Ozaltin*, 708 F.3d at 370. Moreover, a petitioner can have concurrent *ne exeat* rights deriving both from statute and from a custody order. *See Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 203 (E.D.N.Y.), *aff'd*, 401 F. App'x 567 (2d Cir. 2010). The cases respondent cites do not hold otherwise. *See* Resp't's Cross-mot. 10–12 (citing *Haimdas*, 720 F. Supp. 2d at 203; *Poliero v. Centenaro*, No. 09-CV-2682 (RRM) (CLP), 2009 WL 2947193, at *11–12 (E.D.N.Y. Sept. 11, 2009), *aff'd*, 373 F. App'x 102 (2d Cir. 2010); *Jacinto Fernandez v. Baily*, No. 10-CV-84 (SNLJ), 2010 WL 2773569, at *3 (E.D. Mo. Jul. 14, 2010); *Radu v. Toader*, 805 F. Supp. 2d 1, 9 (E.D.N.Y. 2011), *aff'd*, 463 F. App'x 29 (2d Cir. 2012)).

[9] Respondent's argument that Article 79 only applies when parents come to their own custody agreement is not reflected in the expert reports or anywhere else in the record. Resp't's Cross-mot. 6; Resp't's Reply 7–8.

stripped him of physical custody of N.L. Raicevic Report 8–9. She fails to recognize that "the Convention's broad definition" of "rights of custody" is not constrained to "traditional notions of physical custody." *Abbott*, 560 U.S. at 12; *see also Ozaltin*, 708 F.3d at 367 ("[T]he Convention recognizes the increasingly common exercise of joint legal custody, in which one parent cares for the child while the other has joint decisionmaking authority concerning the child's welfare." (citation and quotation marks omitted)). *Abbott* establishes that the joint right to determine a child's residence—the precise right Article 79 affords petitioner—is a custody right under the Hague Convention, 560 U.S. at 14, and the 2015 court judgment does not disturb that. Thus, there is no genuine dispute that petitioner has *ne exeat* rights over N.L.

Petitioner also has shown that respondent wrongfully retained N.L. in breach of his *ne exeat* rights. "'[W]rongful retention' occurs when one parent, having taken the child to a different Contracting State with permission of the other parent, fails to return the child to the first Contracting State when required." *Marks ex rel. SM v. Hochhauser*, 876 F.3d 416, 421 (2d Cir. 2017). It is undisputed that petitioner consented to N.L. traveling to the United States with respondent and that N.L.'s and respondent's B-2 tourist visas expired on January 1, 2020, which requires them to leave the country. N.L. Consent Form; Pet'r's Statement ¶¶ 8, 14. Respondent contests, however, the scope of petitioner's consent. She claims that the face of the consent form authorized N.L.'s remaining in the United States indefinitely because it allows N.L. to "cross the border" for the purpose of "traveling" abroad for an "unlimited" period of time. N.L. Consent Form. But in evaluating consent, courts look to "the petitioner's subjective intent, including the nature and scope of the alleged consent." *In re Kim*, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005). To preclude the return remedy, a respondent must show the petitioner had the "'subjective intent' to permit Respondent to remove *and* retain the child for an indefinite or permanent time period."

*Id.*

While one could interpret the term "unlimited" to encompass one trip of infinite length on its face,[10] petitioner has presented uncontroverted evidence that he understood the consent form only to authorize an unrestricted number of temporary trips. Not only did petitioner testify to this understanding, Lukic Dep. Tr. 128:8–15, but respondent also confirmed it. She testified that she never spoke to petitioner about "how long the trip [to the United States] [wa]s going to be," nor did she "know that [she] was going to stay" in the United States ahead of time. Elezovic Dep. Tr. 61:10–14, 22–24. Thus, petitioner could not have formed the intent to authorize N.L.'s indefinite relocation to the United States beyond the bounds of a tourist visa. Moreover, respondent testified that she understood both the form petitioner signed for N.L. and the nearly identical form she signed for D.L. to grant "permission just to . . . freely get over the border to get out of the country, and nothing else." Elezovic Dep. 66:6–13, 70:10–16.[11] Based on this evidence, no reasonable jury could find that petitioner consented to N.L.'s indefinite retention in the United States and thus petitioner has established that N.L.'s retention was wrongful after the expiration of the parties' B-2 visas on January 1, 2020.

**C. Petitioner was exercising his *ne exeat* rights when respondent wrongfully retained N.L.**

"[T]he standard for evaluating whether a petitioner is exercising custody at the time of

---

[10] Merriam-Webster defines "unlimited" as "lacking any controls," "boundless," or "not bounded by exceptions." *Unlimited*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/unlimited (last visited Feb. 8, 2021).

[11] The other evidence respondent invokes is immaterial. The fact that petitioner could have explicitly limited the bounds of his travel consent on the form does not rebut the parties' mutual testimony that they understood the form to contain an implied limitation against indefinite relocation. Similarly, the fact that petitioner signed N.L.'s passport application shortly before she traveled to the United States proves nothing more than the uncontested fact that petitioner consented to N.L.'s visiting the United States.

removal is fairly lenient." *Valles Rubio v. Veintimilla Castro*, No. 19-CV-2524 (KAM) (ST), 2019 WL 5189011, at \*18 (E.D.N.Y. Oct. 15, 2019), *aff'd*, 813 F. App'x 619 (2d Cir. 2020). "A 'person cannot fail to "exercise" [his] custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.'" *Souratgar v. Fair*, No. 12-CV-7797 (PKC), 2012 WL 6700214, at \*4 (S.D.N.Y. Dec. 26, 2012) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996)), *aff'd sub nom. Souratgar v. Lee*, 720 F.3d 96 (2d Cir. 2013). "[A] *ne exeat* right is by its nature inchoate and so has no operative force except when the other parent seeks to remove the child from the country." *Abbott*, 560 U.S. at 13. "If that occurs, the parent can exercise the *ne exeat* right by declining consent to the exit or placing conditions to ensure the move will be in the child's best interests. When one parent removes the child without seeking the *ne exeat* holder's consent, it is an instance where the right would have been exercised but for the removal or retention." *Id.* (citation and quotation marks omitted).

Here, petitioner has shown that respondent sought his permission to travel to the United States with N.L. and that he consented to temporary visits. *See supra* Section I.B. These facts alone show that petitioner was exercising his *ne exeat* rights at the time respondent wrongfully retained N.L. *See Valles Rubio*, 2019 WL 5189011, at \*18 (finding petitioner exercised *ne exeat* right "by consenting to limited-duration travel"). Moreover, petitioner has shown that respondent retained N.L. in the United States past the boundaries of his consent, *see supra* Section I.B, and that he submitted a request for return under the Hague Convention on February 3, 2020, in addition to the instant lawsuit. *See* Return Request; *see also Haimdas*, 720 F. Supp. 2d at 204 (finding the petitioner "would have exercised her *ne exeat* right but for the retention" because she declined to consent to her children "staying out of England for longer than one month" but "had no way to enforce that condition once they were physically present in the United States").

15

Respondent does not address whether petitioner was exercising his *ne exeat* rights at the time of N.L.'s retention beyond challenging the scope of his consent, and I already have determined that respondent's evidence fails to rebut petitioner's showing on that point. *See supra* Section I.B. Instead, respondent asserts, and petitioner denies, that petitioner did not exercise his visitation rights regularly in Montenegro. Resp't's Cross-mot. 14–15; Pet'r's Opp'n Statement ¶¶ 22–26, 28. This dispute is neither material nor genuine. First, petitioner need not have exercised his visitation rights regularly to have exercised his right to determine N.L.'s country of residence. *See Abbott*, 560 U.S. at 13. Second, even if petitioner's exercise of visitation rights were relevant, respondent's evidence fails to show "clear and unequivocal abandonment of the child." *Souratgar*, 2012 WL 6700214, at *4. Both parties agree that N.L. would go to Ulcinj "in the summers so that [petitioner] can see" her, Pet'r's Opp'n Statement ¶ 27, showing that the two at least were together on those occasions. *See In re D.T.J.*, 956 F. Supp. 2d 523, 532 (S.D.N.Y. 2013) (finding petitioner's "lapses . . . in visiting with [the child] do not disentitle him to relief"). Thus, petitioner has established a prima facie entitlement to the return remedy that respondent has failed to rebut.

## II.     Respondent has failed to show either that undisputed facts support her affirmative defenses or that a reasonable jury could find those defenses established.

Respondent raises four affirmative defenses: (1) that petitioner consented to N.L.'s retention in the United States; (2) that petitioner was not exercising custody rights at the time of N.L.'s retention; (3) that judicial proceedings were not commenced within one year of N.L.'s retention and now she is well settled in New York; and (4) that there is a grave risk that N.L.'s return would expose her to harm. Resp't's Cross-mot. 14–18; Resp't's Reply 8–10. She has failed to show either that she is entitled to summary judgment on any of these defenses or that genuine disputes of material facts exist regarding them.

16

**A. Petitioner did not consent to N.L.'s retention in the United States.**

To establish a consent defense, a respondent must show "by a preponderance of the evidence that Petitioner had the 'subjective intent' to permit Respondent to remove *and* retain the child for an indefinite or permanent time period." *Kim*, 404 F. Supp. 2d at 516. For the same reasons that respondent fails to rebut petitioner's prima facie case of wrongful retention on the basis of consent, she fails to raise genuine disputes of material fact regarding his consent as a defense, let alone show by a preponderance of the evidence that petitioner intended to consent to N.L.'s indefinite relocation. *See supra* Section I.B.

**B. Petitioner was exercising his *ne exeat* rights when respondent wrongfully retained N.L.**

To establish a defense under Article 13(a) of the Hague Convention, a respondent must show by a preponderance of the evidence that the petitioner "was not actually exercising custody rights at the time of" the child's removal or retention. *Blondin v. Dubois*, 189 F.3d 240, 246 (2d Cir. 1999). For the same reasons that respondent fails to rebut petitioner's prima facie showing that he was exercising his custody rights at the time of N.L.'s retention, she fails to raise genuine disputes of material fact regarding this defense, let alone show by a preponderance of the evidence that petitioner was not exercising his *ne exeat* rights in January 2020. *See supra* Section I.C.

**C. The well-settled defense is time-barred.**

To establish the well-settled defense under Article 12 of the Hague Convention, a respondent must show by a preponderance of the evidence "that judicial proceedings were not commenced within one year of the child's abduction and the child is well-settled in the new environment." *Blondin*, 189 F.3d at 246. Judicial proceedings refer to "a petition in a civil action for the return of the child in a court that has jurisdiction in the place where the child is located at

17

the time the petition is filed." *Mohácsi v. Rippa*, 346 F. Supp. 3d 295, 324 (E.D.N.Y. 2018) (citation omitted).

The Second Circuit has held that when a petitioner initially consented to a child's temporary removal but later challenges the child's retention, the one-year clock starts when the wrongful *retention* begins. *Hofmann v. Sender*, 716 F.3d 282, 295 & n.6 (2d Cir. 2013). "The Explanatory Report to the Hague Convention explains that in cases where the initial removal is consensual, the wrongful retention occurs when the 'child ought to have been returned to [his or her] custodians or [when] the holder of the right [of] custody refused to agree to an extension of the child's stay in a place other than that of [his or her] habitual residence.'" *Demaj v. Sakaj*, No. 09-CV-255 (JGM), 2013 WL 1131418, at *7 (D. Conn. Mar. 18, 2013) (quoting Elisa Pérez-Vera, *Explanatory Report: Hague Conference on Private International Law,* in 3 Acts and Documents of the Fourteenth Session 458–59 ¶ 108 (1980)).

Here, given that both parties understood the consent forms to allow only temporary travel, *see supra* Section I.B, the wrongful retention began when N.L.'s and respondent's tourist visas expired on January 1, 2020 and the two were supposed to leave the country, Pet'r's Statement ¶ 14. Petitioner filed the instant lawsuit on July 13, 2020, *see* Pet., less than one year after that point. Thus, this exception does not apply.

Even if it did, respondent has not presented sufficient evidence to raise the possibility that a reasonable jury could find N.L. is well settled, let alone grant summary judgment on that basis. In evaluating this defense, courts consider the following factors: "(1) the age of the child; (2) the stability of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child attends church [or participates in other community or extracurricular school activities] regularly; (5) the respondent's employment and financial

stability; (6) whether the child has friends and relatives in the new area; and (7) the immigration

status of the child and the respondent." *Lozano v. Alvarez*, 697 F.3d 41, 57 (2d Cir. 2012), *aff'd*

572 U.S. 1 (2014). Here, it is undisputed that N.L. has been in New York for more than eighteen

months, attends school here remotely, and lives with respondent and respondent's sister, mother,

and niece. Pet'r's Opp'n Statement ¶¶ 47–49. But it also is undisputed that both N.L. and

respondent have overstayed their tourist visas, that respondent is unemployed, that N.L.'s father

and brother remain in Montenegro, and that N.L. is only six years old. Pet'r's Statement ¶¶ 2, 14,

50, 94. On balance, no reasonable jury could conclude that N.L. is well settled based on this

evidence.

### D.  N.L. does not face a grave risk of harm upon return.

To establish a harm defense under Article 13(b) of the Hague Convention, a respondent

must show by clear and convincing evidence that "there is a grave risk that [the child's] return

would expose the child to physical or psychological harm or otherwise place the child in an

intolerable situation." *Blondin*, 189 F.3d at 245 (citation omitted). "[A] grave risk of harm from

repatriation arises in two situations: (1) where returning the child means sending him to a zone of

war, famine, or disease; or (2) in cases of serious abuse or neglect, or extraordinary emotional

dependence, when the court in the country of habitual residence, *for whatever reason*, may be

incapable or unwilling to give the child adequate protection." *Souratgar*, 720 F.3d at 103

(citation and quotation marks omitted).

Respondent does not invoke the first ground. Rather, she appears to claim that N.L.'s

living conditions in Podgorica would amount to "serious abuse or neglect," *id.*, because after

petitioner kicked respondent and N.L. out of his home when N.L. was twenty days old, the two

lived in squalor in Podgorica and petitioner failed to pay child support despite being aware of

19

their economic conditions. Resp't's Cross-mot. 17–18. Even if I credited these contested facts, regardless of whether they amount to "serious abuse or neglect," *Souratgar*, 720 F.3d at 103, respondent has not argued, let alone shown, that Montenegrin courts cannot adequately protect N.L. She instead admitted that "[t]he Podgorica courts conduct hearings in which both parties are heard." Resp't's Am. Statement ¶ 82. Thus, the parties' disputes over N.L.'s living conditions and petitioner's conduct are immaterial, and respondent has failed to establish a harm defense.[12]

## CONCLUSION

For the foregoing reasons, I grant petitioner's motion for summary judgment and deny respondent's cross-motion for summary judgment. Accordingly, I order respondent to return N.L. to Montenegro forthwith. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          February 9, 2021
                Brooklyn, New York

---

[12] Respondent raises for the first time on reply that the instant action is "premature" because a custody dispute over N.L. allegedly is ongoing in Montenegrin Family Court. Resp't's Reply 14 (citing Am. Pet. ¶¶ 11–14). I need not consider "[a]rguments . . . made for the first time in a reply brief." *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). However, I note that the primary purpose of the return remedy under the Hague Convention is to "leave[] custodial decisions to the courts of the country of habitual residence," *Abbott*, 560 U.S. at 9, and to prevent one parent from gaining an advantage in those proceedings by leaving the country, *see Gitter*, 396 F.3d at 129–30.